UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

JANN ORTEGA, WIDMAN SANCHEZ and FELIPE
ESTEVEZ, on behalf of themselves and all others similarly
situated,

                                   *Plaintiffs,*

        -against-

BRACCO'S CLAM & OYSTER BAR, INC. d/b/a
BRACCO'S CLAM & OYSTER BAR, MICHAEL
BRACCO, JONATHAN BRACCO, ROBERT BRACCO,
and GERARD BRACCO,

                                   *Defendants.*

-----------------------------------------------------------------------X

Case No.: 17-cv-6189

**COLLECTIVE & CLASS
ACTION COMPLAINT**

Plaintiffs Jann Ortega, Widman Sanchez and Felipe Estevez, on behalf of themselves and all others similarly situated (collectively referred to as "Plaintiffs"), by and through their attorneys, Frank & Associates, P.C., bring this action against Defendants Bracco's Clam & Oyster Bar, Inc., d/b/a Bracco's Clam & Oyster Bar, Michael Bracco, Jonathan Bracco, Robert Bracco, and Gerard Bracco (collectively referred to as "Defendants") and respectfully allege as follows:

## INTRODUCTION

1.  Plaintiffs bring this action to recover unpaid overtime wages owed to them by Defendants, pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.,* ("FLSA"), Article 19 of New York Labor Law Article §650 *et seq*., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142, 2.2 ("New York Labor Law"). Specifically, Defendants failed to pay Plaintiffs one and half (1 ½) times their normal rate of pay for all hours worked in excess of forty (40) in a single workweek.

2.  Plaintiffs further allege that Defendants failed to compensate them for one (1)

additional hour of pay, at the basic minimum wage rate for each day the spread of hours worked exceeded ten (10) hours, throughout the entirety of their employment with Defendants.

3.      Plaintiffs further allege that, pursuant to New York Labor Law § 195, Defendants failed to provide them with notice of their rate of pay, the basis thereof, the employer's regular pay day, the name, address and telephone number of the employer and other information required by the statute upon commencement of their employment.

4.      Plaintiffs also bring this action based upon Defendants' intentional breach of its fiduciary duties to Plaintiffs. Specifically, Plaintiffs commenced their employment with Defendants with the expectation that Defendants would make proper contributions to Social Security, Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare on behalf of Plaintiffs. Defendants breached this duty by failing to pay the above-mentioned contributions on behalf of Plaintiffs throughout the entirety of their employment.

5.      Plaintiffs also bring this action based upon Defendants' intentional conversion and intentional fraudulent withholdings of the above-mentioned contributions that should have been made on Plaintiffs' behalf. Defendants retained benefits and monetary value by unlawfully retaining payments, which should have been contributed towards Social Security, Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare, thereby denying Plaintiffs the benefits associated with such programs.

6.      Punitive damages are required due to Defendants' continuous, willful fraudulent activity in unlawful payroll practices over the last six (6) years.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the federal law claims pursuant to 29 U.S.C. § 201, *et seq.*, and 28 U.S.C. § 1331, and supplemental jurisdiction over all state law claims pursuant to

28 U.S.C. § 1367.

8.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391, because the events or omissions giving rise to the claim for unlawful employment practices occurred in Nassau County, New York.

## PARTIES

9.      At all times relevant to the Complaint, Plaintiff Jann Ortega ("Plaintiff Ortega") resided at 160 Guy Lombardo Avenue, Apartment 3G, Freeport, New York 11520.

10.     At all times relevant to the Complaint, Plaintiff Widman Sanchez ("Plaintiff Sanchez") resided at 51 Saint Marks Avenue, Freeport, New York 11520.

11.     At all times relevant to the Complaint, Plaintiff Felipe Estevez ("Plaintiff Estevez") resided at 85 Westside Avenue, Freeport, New York 11520.

12.     At all times relevant to the Complaint, Plaintiffs were employed by Defendants as dishwashers, food preparers, and kitchen aides in their full-service restaurant establishment.

13.     At all times relevant to the Complaint, Plaintiffs were "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e) and New York Labor Law § 190(2).

14.     At all times relevant to the Complaint, Defendants Bracco's Clam & Oyster Bar, Inc. was and still is a domestic business corporation incorporated under the laws of the State of New York, with their primary place of business at 319 Woodcleft Avenue, Freeport, New York 11520.

15.     At all times relevant to the Complaint, Defendants Bracco's Clam & Oyster Bar, Inc. was an "employer" within the meaning of the FLSA, 29 U.S.C. §203(d) and New York Labor Law §190(3).

16.     At all times relevant to the Complaint, Defendants Michael Bracco, Jonathan

Bracco, Robert Bracco, and Gerard Bracco were "employers" within the meaning of the FLSA, 29 U.S.C. §203(d) and New York Labor Law §190(3).

17.    Upon information and belief, Defendants Michael Bracco, Jonathan Bracco, Robert Bracco, and Gerard Bracco are shareholders and owners of Defendant Bracco's Clam & Oyster Bar, Inc.

18.    Upon information and belief, Defendant Michael Bracco, Jonathan Bracco, Robert Bracco, and Gerard Bracco had authority over personnel and payroll decisions for Defendant Bracco's Clam & Oyster Bar, Inc.

19.    At all relevant times, Defendant Bracco's Clam & Oyster Bar, Inc. was "an enterprise engaged in interstate commerce" within the meaning of the FLSA § 207(a).

20.    At all relevant times, Defendant Bracco's Clam & Oyster Bar, Inc. had employees engaged in commerce or in the production of goods for commerce and handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

21.    Upon information and belief, at all relevant times, Defendant Bracco's Clam & Oyster Bar, Inc. had annual gross volume of sales in excess of $500,000.

## FACTUAL ALLEGATIONS

### Plaintiff Ortega

22.    Plaintiff Ortega began working for Defendants in April 2011 as a kitchen aide. Plaintiff Ortega continues to work for Defendants and who job duties are including, *inter alia*, preparing food and cleaning and washing dishes.

23.    Plaintiff Ortega works during the summer season only, from April to October, each year since he commenced his employment with Defendants.

24.     Plaintiff Ortega works on Monday, Tuesday, Wednesday, and Sunday from approximately 8:00 a.m. to 10:00 p.m., and Friday and Saturdays from approximately 8:00 until 11:00 p.m. Thursday was Plaintiff Ortega's only day off.

25.     On average, Plaintiff Ortega works approximately eighty-six (86) hours a week.

26.     From April 2011 to May 2016, Plaintiff Ortega was paid $10.00 an hour, in cash, regardless of the number of hours worked.

27.     During this time, Plaintiff Ortega was never paid overtime wages at a rate no less than one and a half (1 ½) times his normal rate of pay for all hours worked in excess of forty (40). For example, during the week of June 8, 2015, Plaintiff Ortega worked eighty-five (85) hours, but was only paid $10.00 an hour for each hour worked.

28.     Defendants also failed to compensate Plaintiff Ortega one (1) additional hour of pay, at the basic minimum wage rate for each day the spread of hours he worked exceeded ten (10) hours, throughout the entirety of his employment.

29.     Each week, Defendants ripped up the accurate timecards Plaintiff Ortega handwrote to describe his work on behalf of the Defendants and forced him to sign forged and unauthentic records which fraudulently stated Plaintiff Ortega had worked only forty (40) hours each week.

30.     Defendants did not have a clock in/out machine or any other recording device to keep account of Plaintiff Ortega's actual hours worked.

31.     Since Plaintiff Ortega did not receive a paystub or any other documentation evidencing his pay, hours worked or schedule, Defendants failed to comply with the notice and recordkeeping requirements of New York Labor Law § 195. Further, Defendants did not provide Plaintiff Ortega, at the time of his hire, or anytime thereafter, with written notice, in his primary language, Spanish, of his rate of pay, the basis thereof, any allowances claimed by the employer,

the employer's regular pay day, the name of the employer, the employer's address and the employer's telephone number.

32.    Upon information and belief, since Plaintiff Ortega was paid solely in cash during this time, Defendants fraudulently failed to pay any payroll taxes on Plaintiff Ortega's wages and failed to make proper contributions to Social Security, Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare on Plaintiff Ortega's behalf.

33.    By employing Plaintiff Ortega, Defendants violated its fiduciary responsibility to its employee. Specifically, Defendants had a fiduciary duty to pay Plaintiff Ortega proper wages for all work performed for Defendants' benefit, and to make mandatory contributions on Plaintiff Ortega's behalf for Social Security benefits, Workers' Compensation Insurance, Unemployment Insurance, New York Disability Insurance, and Medicare coverage.

34.    Plaintiff Ortega commenced his employment with Defendants with the expectation that proper contributions to Social Security, Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare would be made on his behalf. However, Defendants failed to make any such contributions.

35.    In fact, rather than making these contributions, Defendants fraudulently converted the contributions for their own use, excluded Plaintiff Ortega from the use and enjoyment of the benefits he expected to receive. By converting these contributions, Defendants were unjustly enriched.

36.    Further, Defendants willfully failed to pay any payroll taxes on Plaintiff Ortega's wages, thus defrauding the Internal Revenue Service and New York State Department of Taxation, in violation of Federal and State law.

37.    Throughout his employment with Defendants, Plaintiff Ortega complained about

not being paid proper overtime wages. Beginning in June 2016, after years of complaining, Defendants finally began to pay wages for Plaintiff's overtime hours worked.

38.    After instituting the proper payment of Plaintiff Ortega's overtime wages, Defendants commenced payment to him by check, with deductions being made for payroll taxes and contributions to Social Security, Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare. Whether such deductions and contributions were actually made to the appropriate governmental municipalities are not confirmed at the time and this Complaint if filed with the Court.

**Plaintiff Estevez**

39.    Plaintiff Estevez worked for Defendants from April 2012 to April 2017 as a kitchen aide, whose job duties included, *inter alia*, preparing food and cleaning and washing dishes.

40.    During the winter season, November to March, Plaintiff Estevez worked Tuesday and Wednesday from 8:00 a.m. until approximately 6:00 p.m., and Thursday through Sunday from approximately 8:00 a.m. to approximately 11:00 p.m. Monday was Plaintiff Estevez's only day off. On average, Plaintiff Estevez worked approximately seventy-two (72) hours a week.

41.    During the summer season, April to October, Plaintiff Estevez worked from 8:00 a.m. until approximately 2:00 a.m. seven (7) days a week. On average, Plaintiff Estevez worked approximately ninety-eight (98) hours a week.

42.    From April 2012 until in or about May 2016, Plaintiff Estevez was paid $9.00 an hour, in cash, regardless of the number of hours worked.

43.    During this time, Plaintiff Estevez was never paid overtime wages at a rate no less than one and a half (1 ½) times his normal rate of pay for all hours worked in excess of forty (40). For example, during the week of June 9, 2014, Plaintiff worked ninety-eight (98) hours, but was

only paid $9.00 an hour for each hour worked.

44.    Defendants also failed to compensate Plaintiff Estevez one (1) additional hour of pay, at the basic minimum wage rate for each day the spread of hours he worked exceeded ten (10) hours, throughout the entirety of his employment.

45.    Each week, Defendants ripped up the accurate timecards Plaintiff Estevez handwrote to describe his work on behalf of the Defendants and forced him to sign forged and unauthentic records which fraudulently stated Plaintiff Ortega had worked only forty (40) hours each week.

46.    Defendants did not have a clock in/out machine or any other recording device to keep account of Plaintiff Estevez's hours worked.

47.    Since Plaintiff Estevez did not receive a paystub or any other documentation evidencing his pay, hours worked or schedule, Defendants failed to comply with the notice and recordkeeping requirements of New York Labor Law § 195. Further, Defendants did not provide Plaintiff Estevez, at the time of his hire, or anytime thereafter, with written notice, in his primary language, of his rate of pay, the basis thereof, any allowances claimed by the employer, the employer's regular pay day, the name of the employer, the employer's address and the employer's telephone number.

48.    Upon information and belief, since Plaintiff Estevez was paid in cash during this time, Defendants fraudulently failed to pay any payroll taxes on Plaintiff Estevez's wages and failed to make proper contributions to Social Security, Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare on Plaintiff Estevez's behalf.

49.    By employing Plaintiff Estevez, Defendants had a fiduciary duty to Plaintiff Estevez. Specifically, Defendants had a fiduciary duty to pay Plaintiff Estevez proper wages for

all work performed for Defendants' benefit and to make proper contributions on Plaintiff's behalf to Social Security, Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare. Defendants breached their fiduciary duty to Plaintiff Estevez by failing to make proper contributions on his behalf for the work he performed.

50.    Plaintiff Estevez commenced his employment with Defendants with the expectation that proper contributions to Social Security, Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare would be made on his behalf. However, Defendants failed to make any such contributions.

51.    In fact, rather than making these contributions, Defendants fraudulently converted the contributions for their own use, excluded Plaintiff Estevez from the use and enjoyment of them and subjected Plaintiff Estevez to harm. By converting these contributions, Defendants were unjustly enriched.

52.    Further, Defendants willfully failed to pay any payroll taxes on Plaintiff Estevez's wages, thus defrauding the Internal Revenue Service and New York State Department of Taxation, in violation of Federal and State law.

53.    On or about June 2014, Plaintiff Estevez injured his back on the job while lifting heavy boxes to a high-elevated shelf. Plaintiff Estevez went to see a doctor who informed him that he would need back surgery. However, since Plaintiff Estevez was not covered by Workers' Compensation, due to Defendants' failure to make proper contributions, Plaintiff Estevez was unable to get the required surgery, thus causing permanent damage to Plaintiff Estevez's back.

54.    On or about June 2016, after years of complaining, Defendants decided to finally begin paying Plaintiff Estevez proper overtime wages. Therefore, Defendants began paying Plaintiff Estevez solely by check, evidencing the proper number of hours worked, with proper

payroll taxes and deductions being made to Social Security, Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare. Whether such deductions and contributions were actually made to the appropriate governmental municipalities are not confirmed at the time and this Complaint if filed with the Court.

**Plaintiff Sanchez**

55.    Plaintiff Sanchez worked for Defendants from April 2011 to May 2017 as a kitchen aide, whose job duties included, *inter alia*, preparing food and cleaning and washing dishes.

56.    During the winter season, November to March, Plaintiff Sanchez only worked Friday through Sunday from 8:00 a.m. until approximately 6:00 p.m.

57.    During the summer season, April to October, Plaintiff Sanchez worked from 8:00 a.m. until approximately 2:00 a.m. seven (7) days a week. On average, Plaintiff Sanchez worked approximately ninety-eight (98) hours a week.

58.    Throughout the entirety of his employment, Plaintiff Sanchez was paid $12.00 an hour, in cash, regardless of the number of hours worked.

59.    During this time, Plaintiff Sanchez was never paid overtime wages at a rate no less than one and a half (1 ½) times his normal rate of pay for all hours worked in excess of forty (40). For example, during the week of July 18, 2016, Plaintiff worked ninety-six (96) hours, but was only paid $12.00 an hour for each hour worked.

60.    Defendants also failed to compensate Plaintiff Sanchez one (1) additional hour of pay, at the basic minimum wage rate for each day the spread of hours he worked exceeded ten (10) hours, throughout the entirety of his employment.

61.    Each week, Defendants ripped up the accurate timecards Plaintiff Sanchez handwrote to describe his work on behalf of the Defendants and forced him to sign forged and

unauthentic records which fraudulently stated Plaintiff Ortega had worked only forty (40) hours each week.

62.      Defendants did not have a clock in/out machine or any other recording device to keep account of Plaintiff Sanchez's hours worked.

63.      Since Plaintiff Sanchez did not receive a paystub or any other documentation evidencing his pay, hours worked or schedule, Defendants failed to comply with the notice and recordkeeping requirements of New York Labor Law § 195. Further, Defendants did not provide Plaintiff Sanchez, at the time of his hire, or anytime thereafter, with written notice, in his primary language, of his rate of pay, the basis thereof, any allowances claimed by the employer, the employer's regular pay day, the name of the employer, the employer's address and the employer's telephone number.

64.      Upon information and belief, since Plaintiff Sanchez was paid in cash during this time, Defendants fraudulently failed to pay any payroll taxes on Plaintiff Sanchez's wages and failed to make proper contributions to Social Security, Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare on Plaintiff Sanchez's behalf.

65.      By employing Plaintiff Sanchez, Defendants had a fiduciary duty to Plaintiff Sanchez. Specifically, Defendants had a fiduciary duty to pay Plaintiff Sanchez proper wages for all work performed for Defendants' benefit and to make proper contributions on Plaintiff's behalf to Social Security, Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare. Defendants breached their fiduciary duty to Plaintiff Sanchez by failing to make proper contributions on his behalf for the work he performed.

66.      Plaintiff Sanchez commenced his employment with Defendants with the expectation that proper contributions to Social Security, Workers' Compensation, Unemployment

Insurance, New York Disability Insurance, and Medicare would be made on his behalf. However, throughout the entirety of Plaintiff Sanchez's employment, Defendants failed to make any such contributions.

67.     In fact, rather than making these contributions, Defendants fraudulently converted the contributions for their own use, excluded Plaintiff Sanchez from the use and enjoyment of them and subjected Plaintiff Sanchez to harm. By converting these contributions, Defendants were unjustly enriched.

68.     Further, Defendants willfully failed to pay any payroll taxes on Plaintiff Sanchez's wages, thus defrauding the Internal Revenue Service and New York State Department of Taxation, in violation of Federal and State law.

69.     On or about May 2017, Plaintiff Sanchez severely burned his hand on the job while helping in the kitchen. Since Plaintiff Sanchez was not covered by Workers' Compensation, due to Defendants' failure to make proper contributions, Plaintiff Sanchez was unable to get the medical treatment he needed. Plaintiff Sanchez asked if could have one-week off to heal from the burns, instead Defendants decided to terminate Plaintiff Sanchez.

## COLLECTIVE ACTION CLAIMS

70.     Plaintiffs bring their FLSA claims as a collective action, pursuant to 29 U.S.C. § 216(b) on behalf of all similarly situated non-exempt persons who are or were employed by Defendants within three years from the filing of this Complaint ("FLSA Collective").

71.     At all relevant times, Plaintiffs and other members of the FLSA Collective, have had substantially similar job requirements and pay provisions.

72.     At all relevant times, Plaintiffs and other members of the FLSA Collective, have been subject to Defendants' common practices, policies, programs, procedures, protocols and

plans of willfully failing and refusing to pay them proper overtime wages at a rate of at least one and one-half (1 ½) times their regular rate for every hour of work in excess of forty (40) hours per workweek.

73.    The claims of Plaintiffs stated herein are similar to those of the Defendants' other employees.

74.    The FLSA Collective is readily identifiable and ascertainable through the use of Defendants' records.  The FLSA Collective should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA Collective, who have been unlawfully deprived of proper overtime wages in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld by Defendants.

<u>**FEDERAL RULES OF CIVIL PROCEDURE**</u>
<u>**RULE 23 CLASS ACTION ALLEGATIONS**</u>

75.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs as if set forth fully herein.

76.    Plaintiffs represent a class ("Rule 23 Class") consisting of all kitchen aides and dishwashers employed by Defendants from 2014 to the date of judgment. Plaintiffs and the members of the proposed class have been subjected to the same unlawful practices

77.    Plaintiffs bring these claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated non-exempt employees of Defendants who were: (1) not paid proper overtime wages for all hours worked in excess of forty (40) each workweek; (2) not paid spread of hours pay for all days in which the spread of hours exceeded ten (10); (3) not given proper pay rate notices; and (4) on whose behalf contributions were not made to Federal and State mandated benefit programs.

78.    Plaintiffs are members of the Class they seek to represent.

79.    Plaintiffs reserve the right to amend the Class definition based on discovery.

**A. Efficiency of Class Prosecution of Class Claims**

80.    Upon information and belief, there are many current and former employees who are similarly situated to Plaintiffs, who have been underpaid in violation of the FLSA and New York Labor Law. The named Plaintiffs are representatives of those workers and are acting on behalf of Defendants' current and former employees' interest as well as their own interest in bringing this action.

81.    Certification of this class is the most efficient and economical means for resolving questions of law and fact that are common to Plaintiffs and members of the proposed class.

82.    Plaintiffs' individual claims and their resolution will resolve the common questions of the proposed class.

83.    Plaintiffs seek remedies to eliminate Defendants' willful violation of the FLSA and to recover overtime wages rightfully earned and due to the members of the proposed class.

84.    Plaintiffs also seek to eliminate Defendants' unlawful practices which led to the denial of mandated Federal and State benefits of employment and thereby caused Defendants to be unjustly enriched at the expense of Plaintiffs and members of the proposed class.

85.    Plaintiffs have standing to seek such relief because of the effect Defendants' conduct has had on him individually and on the kitchen aides generally.  These injuries are redressable through systemic relief, such as equitable and injunctive relief, as well as other relief as this Court sees fit.

86.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of a wage and hour litigation like the

present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of the efforts and expense that numerous individual actions engender. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources.  However, treating the claims as a class action would result in a significant savings of these costs.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Additionally, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

### B. Numerosity and Impracticability of Joinder

87.    The proposed Rule 23 Class is so numerous that joinder of all members is impracticable.

88.    The Rule 23 Class Members are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.

89.    Unless the Court promptly issues such notice, persons similarly situated to Plaintiffs, who have been unlawfully deprived of minimum and overtime pay in violation of the FLSA and New York Labor Law, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by the Defendants.

90.     Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing those risks.

### C. Common Questions of Law and Fact

91.     The adjudication of Plaintiffs' claims will directly result in the adjudication of numerous questions of law and fact common to the members of the proposed class.

92.     These common issues include, but are not limited to; (a) whether Defendants unlawfully failed to pay proper overtime compensation for hours worked in excess of forty (40) per week in violation of the FLSA and New York Labor Law; (b) whether Defendants failed to pay spread of hours pay for all days in which the spread of hours exceeded ten (10); (c) whether Defendants failed to provide notice of the pay rate to Plaintiff and the Rule 23 Class; (e) the nature and extent of Rule 23 Class-wide injury and the appropriate measure of damages for the class; and (f) whether Defendants' general practice of failing and/or refusing to pay Plaintiffs and the Rule 23 Class proper compensation was done willfully or with reckless disregard of the federal and state wage and hour laws.

93.     The policies, procedures, and practices implemented by Defendants were applied to all members of the proposed class.

94.     The common issues of law and fact affecting the proposed members of the class predominate over any issues affecting Plaintiffs solely.

### D. Typicality of Claims and Relief Sought

95.     Plaintiffs' claims are typical of the claims of the proposed Rule 23 Class they seek

to represent. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Rule 23 Class, and the relief sought is typical of the relief which would be sought by each member of the proposed class in separate actions.

96.     Plaintiffs seek the following relief for their individual claims and for the claims of the members of the proposed class: (1) proper overtime wages for all hours worked in excess of forty (40) hours per week at a rate of one and one-half times his standard rate of pay; (2) unpaid spread of hours pay; (3) an equal amount of liquidated damages; (4) damages for Defendants' failure to provide proper and accurate notice of Plaintiffs' pay rate; and (5) damages for Defendants' failure to make contributions to Federal and State mandated benefit programs.

### E. Adequacy of Representation

97.     Plaintiffs' interests are akin to those of the members of the proposed class.

98.     Plaintiffs are willing and able to represent the members of the proposed class and will fairly and adequately represent and protect the interest of the Rule 23 Class.

99.     Plaintiffs retained counsel competent and experienced in complex class actions and in labor and employment litigation for over fifty (50) years. Plaintiffs' counsel can competently litigate the individual and class claims sufficiently to satisfy Rule 23(a)(4) of the Federal Rules of Civil Procedure.

## FIRST CAUSE OF ACTION
### Failure to Pay Overtime in Violation of the FLSA

100.     Plaintiffs and the FLSA Collective repeat and reallege each and every allegation in the preceding paragraphs as if set forth fully herein.

101.     Defendants required Plaintiffs and the FLSA Collective to work in excess of forty (40) hours per week and willfully failed to compensate Plaintiffs and the FLSA Collective for the time worked in excess of forty (40) hours each week at a rate of at least one and one-half times

their regular hourly rate of pay in violation of the FLSA, 29 U.S.C. § 207(a)(1).

102. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages.

103. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

104. As a result of Defendants' willful and unlawful failure to pay Plaintiffs and the FLSA Collective overtime wages, they are entitled to recover their unpaid overtime wages, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

<u>SECOND CAUSE OF ACTION</u>
**Failure to Pay Overtime in Violation of New York Labor Law**

105. Plaintiffs and the Rule 23 Class repeat and reallege each and every allegation in the preceding paragraphs as if set forth fully herein.

106. Defendants required Plaintiffs and the Rule 23 Class to work in excess of forty (40) hours per week and willfully failed to compensate Plaintiffs and the Rule 23 Class for the time worked in excess of forty (40) hours each week at a rate of at least one and one-half times their regular hourly rate in violation of New York Labor Law.

107. Defendants willfully violated New York Labor Law by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages. Thus a six (6) year statute of limitations applies.

108. Due to Defendants' violation of the New York Labor Law, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of this action, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
**Failure to Pay Spread of Hours Pay in Violation of New York Labor Law**

109.    Plaintiffs and the Rule 23 Class repeat and reallege each and every allegation in the preceding paragraphs as if set forth fully herein.

110.    Defendants willfully failed to pay Plaintiffs and the Rule 23 Class at the basic New York State minimum wage rate, before allowances, for each day they worked in which the spread of hours worked exceeded ten (10) in violation of New York Labor Law.

111.    Due to Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to recover for each day of his employment, spread of hours pay, plus interest at the statutory compounded rate of 9% per annum, liquidated damages, reasonable attorneys' fees and the costs of this action.

### FOURTH CAUSE OF ACTION
**Failure to Provide Notice of Pay Rate in Violation of New York Labor Law § 195(1)**

112.    Plaintiffs and the Rule 23 Class repeat and reallege each and every allegation in the preceding paragraphs as if set forth fully herein.

113.    Defendants failed to provide Plaintiffs and the Rule 23 Class with notice, in English and in their primary language, of their rate of pay, the basis thereof, allowances claimed as part of the minimum wage; the employer's regular pay day, the name, address and telephone number of the employer and other information required by New York Labor Law § 195(1).

114.    Defendants' violations of the New York Labor Law and its supporting regulations entitle Plaintiffs and the Rule 23 Class Members to recover damages of $50.00 per work day, up to a maximum of $5,000 and attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
**Conversion**

115.    Plaintiffs and the Rule 23 Class repeat and reallege each and every allegation in the

preceding paragraphs as if set forth fully herein.

116.    Defendants unlawfully converted benefits and contributions that should have been made to Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare on Plaintiffs and the Rule 23 Class' behalf.

117.    Defendants intentionally, purposely and fraudulently converted these funds for their own benefit.

118.    Defendants intended to fraudulently convert these contributions for the purpose of exploitation for their own financial benefit and, in essence, to steal Plaintiffs and the Rule 23 Class' money.

119.    Defendants interfered with Plaintiffs and the Rule 23 Class' right to these contributions, and continue to possess these funds to this day.

120.    Plaintiffs and the Rule 23 Class are entitled to recover from Defendants his actual, compensatory, expectation, and punitive damages in an amount to be determined at trial, but in any event, no less than $1,000,000.

## SIXTH CAUSE OF ACTION
### Fraud

121.    Plaintiffs and the Rule 23 Class repeat and reallege each and every allegation in the preceding paragraphs as if set forth fully herein.

122.    Defendants fraudulently and intentionally withheld benefits and contributions to Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare, which should have been made on Plaintiffs and the Rule 23 Class' behalf.

123.    Defendants intended to fraudulently withhold these contributions for the purpose of exploitation for their own financial benefit and, in essence, to steal Plaintiffs and the Rule 23 Class' money.

124.    Plaintiffs and the Rule 23 Class justifiably relied on Defendants, as their employer, that proper contributions would be made to Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare on their behalf.

125.    Upon information and belief, Defendants represented to Plaintiffs and the Rule 23 Class that these contributions would be made on their behalf for all hours worked. As a result of Defendants' misrepresentations, Plaintiffs and the Rule 23 Class suffered financially.

126.    As a result of Defendants' actions, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants their actual, compensatory, expectation, and punitive damages in an amount to be determined at trial, but in any event, no less than $1,000,000.

## SEVENTH CAUSE OF ACTION
### Breach of Fiduciary Duty

127.    Plaintiffs and the Rule 23 Class repeat and reallege each and every allegation in the preceding paragraphs as if set forth fully herein.

128.    Defendants had a fiduciary duty to Plaintiffs and the Rule 23 Class as their employer to ensure that proper contributions were made to Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare.

129.    Defendants breached its duty to Plaintiffs and the Rule 23 Class when it failed to make such contributions.

130.    Due to Defendants' breach, Plaintiffs and the Rule 23 Class suffered actual damages, including but not limited to, not having contributions made to Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare.

131.    As a result of Defendants' actions, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants his actual, compensatory, expectation, and punitive damages in an amount to be determined at trial, but in any event, no less than $1,000,000.

## EIGHTH CAUSE OF ACTION
**Unjust Enrichment**

132.    Plaintiffs and the Rule 23 Class repeat and reallege each and every allegation in the preceding paragraphs as if set forth fully herein.

133.    Defendants retained benefits, property, and monetary value by paying Plaintiffs and the Rule 23 Class in cash and retaining payments which should have been contributed toward Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare. thereby denying Plaintiffs and the Rule 23 Class the benefits associated with these programs.

134.    As a result of Defendants' actions, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants his actual, compensatory, expectation, and punitive damages in an amount to be determined at trial, but in any event, no less than $1,000,000.

## NINTH CAUSE OF ACTION
**PUNITIVE DAMAGES**

135.    Plaintiffs, Collective Action members and the Rule 23 Class repeat and reallege each and every allegation in the preceding paragraphs as if set forth fully herein.

136.    Defendants have engaged in unlawful fraudulent payroll practices over the last six (6) years.

137.    Defendants have willfully defrauded dozens of employees out of proper overtime and spread of hours wages and fraudulently withheld payroll taxes and benefits that should have been contributed to governmental municipalities, including, but not limited to, the Internal Revenue Service, the New York State Department of Taxation, and the Social Security Administration.

138.    These actions were committed with malicious intent and are the exact acts that

punitive damages are appropriate for, in an effort to deter Defendants from committing such fraudulent acts in the future.

139.    As a result of these actions, Plaintiffs, Collective Action members and the Rule 23 Class are entitled to punitive damages, in an amount to be determined at trial, but in any event, no less than $5,000,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all similarly situated Collective Action members and Rule 23 Class members, respectfully request that this Court grant the following relief:

(i)    Unpaid wages, spread of hours pay, unpaid overtime wages, front pay, back pay and an additional and equal amount as liquidated damages, plus interest at the statutory compounded rate of 9% per annum pursuant to New York Labor Law;

(ii)    Actual, compensatory and expectational damages suffered, due to Defendants' failure to make proper contributions to: Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare;

(iii)    Declaring Defendants willfully, intentionally and fraudulently converted funds that should have been contributed to Workers' Compensation, Unemployment Insurance, New York Disability Insurance, and Medicare.;

(iv)    Provide a permanent injunction enjoining Defendants, its agents, employees, officers and successors in interest and those acting in concert with Defendants, from engaging in the illegal and unlawful customs, policies and practices described herein;

(v)    Damages in the amount of $5,000.00 for each Rule 23 Class Member for Defendants' violations of New York Labor Law § 195;

(vi)    Punitive damages for violating the aforementioned statutes, in an amount no less than $5,000,000.00;

(vii)    Compensatory damages for emotional distress and mental anguish, in an amount to be determined at trial

(viii)    All recoverable attorneys' fees and costs incurred in prosecuting these claims; and

(ix)    Such other relief as this Court deems just and proper.

Dated: Farmingdale, New York
      October 24, 2017

**FRANK & ASSOCIATES, P.C.**

By:    _____

Neil M. Frank, Esq.
500 Bi-County Blvd., Suite 465
Farmingdale, New York 11735
T: (631) 756-0400
F: (631) 756-0547
E: nfrank@laborlaws.com

*Attorneys for Plaintiffs*